Boyd Richard **BREWER**, Sr., Plaintiff,

v.

The **UNITED STATES**, the Internal Revenue Service, District Director, Mr. Alexander, and One or More John Does, Defendants.

No. 90 Civ. 3423 (GLG).

United States District Court, S.D. New York.

May 21, 1991.

Boyd R. Brewer, Sr., pro se.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Diana Hassel, of counsel), for defendants.

## OPINION

GOETTEL, District Judge.

The Internal Revenue Service of the United States claims that the plaintiff in this case is a tax protestor. The plaintiff says that he is not. Nevertheless, in the years 1980 to 1982 and 1984 to 1987, plaintiff Boyd Richard Brewer, Sr. did not file tax returns. Despite being employed for many years, he claims that the United States tax laws are not applicable to him. This decision addresses a number of motions relating to litigation brought by the plaintiff in an effort to regain various properties which were seized and sold by the Internal Revenue Service ("IRS") to satisfy the tax deficiencies resulting from Mr.

Brewer's failure to pay taxes in the years 1980 to 1982 and 1984 to 1987.

## I. BACKGROUND

The IRS determined that the plaintiff owed taxes for the years 1980, 1981, 1982, 1984, 1985, 1986 and 1987. As required by law, notices of deficiency for each of these years were sent to the plaintiff. Plaintiff has acknowledged receiving these notices indicating an assessment of $59,906.43. Complaint ¶¶ 8–10. The notices informed him of his right to challenge the deficiencies in Tax Court if he wished to contest his tax liability without paying first. In response to the first notice concerning 1980, plaintiff petitioned the Tax Court. That petition was dismissed, however, for lack of prosecution.

Beginning in 1990, the IRS began to collect the amounts assessed against the plaintiff by filing liens, issuing levies, and seizing and selling the plaintiff's property. Specifically, the IRS seized past wages from plaintiff's employers and money held by Local 4361 and 417 of the Iron Workers union in annuity fund and vacation funds for the plaintiff's benefit. The IRS also seized and sold property owned by the plaintiff in Florida. Property owned by the plaintiff in Newburgh, New York was seized and subsequently released, and the IRS no longer claims a lien on this particular property.

Rather than challenge the merits of the tax assessments, plaintiff has brought this suit to quiet title to his past wages, his annuity fund, the Florida property and the New York property. Plaintiff's complaint focuses on purported defects in the manner in which the IRS assessed taxes against him and in the seizure and sale of his property.

## II. PRELIMINARY INJUNCTION

Plaintiff seeks a preliminary injunction to prevent the IRS from continuing to seize and levy upon plaintiff's property. The government contends that such relief is barred by the Anti–Injunction Act, 26 U.S.C. § 7421(a), which expressly prohibits suits to restrain the collection of taxes ex-

cept under limited circumstances, one of which is where the challenge to collection rests on the ground that the IRS assessed the tax without issuing a notice of deficiency as required by section 6212(a) of Title 26, United States Code.[1]

■ Here, it is undisputed that the IRS issued notice of deficiencies to the plaintiff. Plaintiff's argument focuses on purported deficiencies in the assessment process and in the notices themselves rather then on the lack of notice. Moreover, the notices sent to the plaintiff informed him of his opportunity to litigate in Tax Court. Because plaintiff was afforded "an opportunity to exhaust his administrative remedies, [including] an opportunity to litigate [his] tax liability fully in the Tax Court", assessment and collection was appropriate. Moreover, because the Commissioner was proceeding after notice and demand for payment, "the Anti–Injunction Act applies in full force and 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person.' " *Commissioner of Internal Revenue v. Shapiro,* 424 U.S. 614, 616–19, 96 S.Ct. 1062, 1065–67, 47 L.Ed.2d 278 (1976) (quoting 26 U.S.C. § 7421(a)).

■ Furthermore, we do not find that the judicially created exception to the Anti–Injunction Act is applicable here. In *Enochs v. Williams Packing Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), the Supreme Court held that an injunction may be obtained against the collection of any tax if (1) it is "clear that under no circumstances could the Government ultimately prevail" and (2) "equity jurisdiction" otherwise exists, i.e. the taxpayer shows that he would otherwise suffer irreparable injury. *Id.* at 7, 82 S.Ct. at 1129.

Since Mr. Brewer is challenging the correctness of the procedures followed by the IRS in assessing and collecting his taxes, our focus necessarily must be on whether any scenario will emerge in which the procedures followed will stand. While the plaintiff asserts several grounds which demonstrate, he argues, the inadequacy of the notices of deficiency, we cannot, without clear proof, find that plaintiff has an absolute certainty of success on the merits. Indeed, without this proof, this court is obligated to presume that the IRS complied with the statutory prerequisites to tax assessments. *Borg–Warner Corp. v. Commissioner of Internal Revenue,* 660 F.2d 324, 330 (7th Cir.1981); *United States v. Ahrens,* 530 F.2d 781, 785–86 (8th Cir. 1976); *Lesser v. United States,* 368 F.2d 306, 309 (2d Cir.1966). Such proof is lacking here.

■ Moreover, in the tax collection context, to obtain injunctive relief, the showing of irreparable harm by plaintiff must pass a rigorous test. Thus, despite plaintiff's generalized contentions that he and his family will be thrown into the streets and that his medical condition is being aggravated by the stress of his prolonged struggle with the IRS, not one of his assertions of harm is sufficient to avoid the proscription of the Anti–Injunction Act. Indeed, the Supreme Court has held that injunctive relief is not available simply because collection of the taxes would cause an irreparable injury such as financial ruination. *Williams Packing,* 370 U.S. at 6, 82 S.Ct. at 1128. In addition, the plaintiff has other legal remedies available to ameliorate any potential harm such as working out a settlement with the IRS or paying his taxes and instituting a refund suit in Tax. Plaintiff has chosen not to take advantage of this opportunity and has allowed, on the basis of his own legal conclusions, his obligation to the government to amass into an untenable size. When the absence of a remedy at law is due to a plaintiff's failure to pursue a claim before Tax Court, equity should not intervene. *Shapiro,* 424 U.S. at 634 n. 15, 96 S.Ct. at 1074 n. 15.

1. The Anti–Injunction Act, 26 U.S.C. § 7421, prohibits suits to enjoin the collection of federal taxes. The restraint placed on the courts with respect to enjoining the collection or assessment of taxes is not absolute; extraordinary or exceptional circumstances may exist which are of sufficient importance to warrant court interference. This, however, must be maintained as a narrow exception in accordance with the strong policy of the anti-injunction section protecting revenues. *Pipola v. Chicco,* 274 F.2d 909 (2d Cir.1960).

Plaintiff's motion for a preliminary injunction is denied.

## III. GOVERNMENT'S MOTION TO DISMISS

The IRS makes two arguments in support of its motion to dismiss. First, it argues that the Anti–Injunction Act bars this action because it is nothing more than an attempt to cloak a "defective tax refund suit as an action to quiet title". Because "the exclusive remedy available to a taxpayer seeking 'recovery of an internal revenue tax alleged to be erroneously or illegally assessed or collected' is a suit for refund," Defendant's Brief at 12, the IRS maintains that this court lacks subject matter jurisdiction over this suit.

This view was rejected recently by the Second Circuit in *Kulawy v. United States*, 917 F.2d 729 (2d Cir.1990). There, the court held that while the Anti–Injunction Act does not authorize a taxpayer to challenge an IRS assessment of his tax liability, *id.* at 733; *see Falik v. United States*, 343 F.2d 38, 42 (2d Cir.1965), the taxpayer is not precluded from bringing an action under 28 U.S.C. § 2410(a)(1) to challenge procedural irregularities in the seizure and sale of his property following such an assessment. *Kulawy*, 917 F.2d at 733. *See, e.g., Aqua Bar & Lounge, Inc. v. United States*, 539 F.2d 935, 938–40 (3d Cir.1976); *Schmidt v. King*, 913 F.2d 837, 839 (10th Cir.1990); *Elias v. Connett*, 908 F.2d 521, 527 (9th Cir.1990). Section 2410(a) authorizes suits to quiet title to real or personal property on which the United States has or claims a mortgage or a lien.[2]

■ In *Kulawy*, the IRS sold the plaintiff's property at a public sale to satisfy a tax deficiency. The plaintiff brought suit to quiet title, challenging the legal sufficiency of the procedures followed by the IRS enforcing the lien rather than the substance of the IRS's assessment of tax liability against him. The court noted that

> the language of the section [§ 2410(a)] is sufficiently broad to permit such procedural challenges by the taxpayer, and if a suit under § 2410(a)(1) were not available, 'the taxpayer would have no available means of enforcing compliance with the procedures enacted for his benefit.'

*Id.*, quoting *Aqua Bar*, 539 F.2d at 939. Thus, challenges to procedures followed after assessment are clearly within the jurisdiction of this court. Less clear is whether challenges to procedures followed in making the actual assessment are within the jurisdiction of this court. Here, plaintiff has not challenged his actual liability for the taxes but has based his case on what he perceives to be the failure of the IRS to follow both statutory and regulatory procedures for making tax assessments and issuing Notices of Deficiency. When a procedural error blocks access to the Tax Court, jurisdiction under § 2410(a) is proper even though the procedural validity of the assessment is impugned. *Robinson v. United States*, 920 F.2d 1157, 1161 (3d Cir. 1990). Though plaintiff has complained that the Notices of Deficiency sent to him were inadequate, he nevertheless acknowledges their receipt. He also asserts that he "made the conclusion of law that said notices[s] were bogus[] and any petition into Tax Court would deprive him of his Seventh Amendment Right to a jury trial." Complaint, ¶ 10. Thus, it was his error, rather than any error committed by the IRS which denied him access to the Tax Court where he could properly address the merits of the assessment and any error in the Notices of Deficiency do not provide the basis for jurisdiction.

---

2. The statute reads as follows:

Under the conditions prescribed in this section ..., the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

 1) to quiet title to,

 2) to foreclose a mortgage or other lien upon,

 3) to partition,

 4) to condemn, or

 5) of interpleader or in the nature of interpleader with respect to,

real or personal property on which the United States has or claims a mortgage or other lien.

If a taxpayer fails to timely file a petition for redetermination of the deficiency with the Tax Court, the Service may make an assessment of a tax liability pursuant to 26 U.S.C. § 6203. Plaintiff has complained that the IRS has not followed its regulations regarding the method of assessment. Complaint, at 21–23. Because the assessment does not occur until litigation in Tax Court is time-barred, an aggrieved party has no other forum to challenge the methodology used in making the assessment. We find that a challenge to the procedural regularity of the lien is appropriately within our jurisdiction so long as the merits of the underlying assessment are not contested. In other words, a taxpayer may not under § 2410(a) contest whether tax is owed or the amount of the assessment. Here, because plaintiff has raised questions concerning the procedures followed in making the assessment itself, this court has jurisdiction.

The IRS argues that jurisdiction is not proper under § 2410(a), in any case, because the Government no longer has a lien or mortgage on the property and instead holds only the proceeds of its seizures and sales. It is a well established rule that if the government properly claims a title interest and not a lien interest, 28 U.S.C. § 2410(a) does not confer jurisdiction. *See, e.g., Bradley, Arant, Rose & White v. United States*, 802 F.2d 1323, 1325 (11th Cir.1986). In *Kulawy*, although the disputed property had already been sold, the Second Circuit allowed the suit to continue because the government had a lien on the property at the time the suit was commenced. The court reasoned that "nothing in § 2410(a)(1) ... permits the government to oust the court of jurisdiction validly invoked." *Kulawy*, 917 F.2d at 733–34; *cf. Bank of Hemet v. United States*, 643 F.2d 661, 665 (9th Cir.1981) (28 U.S.C. § 2409a permits quiet title action where the title to the property later sold was still claimed by the government at the time complaint was filed). The *Kulawy* plaintiff had filed his complaint on November 15—the property sale took place on December 5. Thus, at the time the complaint was filed, the government held a lien on the property.

Here, the plaintiff filed his suit on May 18, 1990. At the time the complaint was filed, the United States held a lien on the Newburgh property which was not released until June 20, 1990. Therefore, under § 2410, this court properly has jurisdiction over plaintiff's suit to quiet title with respect to the Newburgh property. However, since the release of the lien cleared the title to this property, at least insofar as the Government's interest in it is concerned, this aspect of the case has been rendered moot. The purpose of a quiet title action is to remove any clouds of title; no adverse claim on Mr. Brewer's Newburgh property remains.

The plaintiff's property in Florida was sold at public sale on March 29, 1990, prior to the filing of this complaint. Jurisdiction does not emerge, therefore, from the plaintiff's concerns regarding the procedures followed in the sale and seizure of that property. With respect to the funds held in the annuity and the vacation fund at the Iron Workers Union for Mr. Brewer's benefit and wages owed to the plaintiff by his employer, we do not know the exact date that the IRS took title to this personal property. Although both IRS papers and the complaint contain indications that the United States had collected the funds prior to the filing of this suit, because inferences must be drawn against the government as the moving party, we will presume that title to the funds changed after the filing of the complaint. This property will be the basis of this court's jurisdiction, provided that the Government did not have possession on the date that the complaint was filed. The Government is granted 60 additional days from the date of this decision to provide us with the dates that the Government collected both the contents of the funds and Mr. Brewer's past wages.

Having found that a factual question exists as to whether jurisdiction is proper, we will go on to consider the substantive aspects of this motion. At the outset, we must observe that the plaintiff, acting pro se, has filed a confused and rambling com-

plaint, supplemented by a large number of documents and legal arguments whose relevance is doubtful. Mindful, however, of our obligation to construe the pleading of a pro se litigant liberally, we have given plaintiff the benefit of every doubt to enable him to overcome technical defects in his argument. The crux of the plaintiff's argument is that the IRS improperly levied on and seized his property in violation of both federal statutes and its own regulations. This allegation manifests itself in six counts which are: 1) the liens against the plaintiff's property were improper because of procedural irregularities, including violations of 26 U.S.C. §§ 6212 and 6213(a) and (b); 2) the IRS was not authorized to levy against the plaintiff's property under 26 U.S.C. § 6331 because it failed to follow proper procedures; 3) the assessments against the plaintiff are barred by a three year statute of limitations under 26 U.S.C. § 6501(a); 4) the IRS had no power to seize and take property under 26 U.S.C. § 6301 because delegations of authority were not properly issued; 5) the IRS acted outside of its authority and breached its fiduciary duty to the plaintiff; and 6) the IRS caused irreparable harm to the plaintiff.

Because both parties have submitted documents outside the pleadings, this motion to dismiss will be treated as one for summary judgment. Fed.R.Civ.P. 12(c); *Kopec v. Coughlin*, 922 F.2d 152 (2d Cir.1991). We will consider each count in turn.

A. Count I: This count alleges that the IRS failed to follow a number of federal laws, thereby making its assessment of taxes and its subsequent levy and seizure of the plaintiff's property illegal. Specifically, plaintiff complains that the notices of deficiency sent to him were inadequate; that there was no written determination or record of the tax assessment nor deficiency as required by 26 U.S.C. §§ 6212, 6213(a) and (b); that the IRS filed a "dummy re-turn" upon which deficiencies cannot be based; that notices were not sent to the last known address as required; that the documents used by the IRS violate the Paperwork Reduction Act, 44 U.S.C. §§ 3501 et seq., because no control numbers appear on them; and that the forms used by the IRS are illegal because they were not published in the Federal Register.

In order to place a lien against property, the IRS must make a valid assessment of taxes pursuant to 26 U.S.C. § 6203. After this assessment is made, the IRS must send a § 6212 "Notice of Deficiency" to the taxpayer. Then the IRS must provide a "Notice and Demand for payment" of the assessed tax as required by § 6303(a). Only after full compliance with these procedures, may the IRS take a lien on the delinquent taxpayer's property.

The plaintiff has challenged the procedural validity of the assessments made for taxes. In support of its position that the assessments were made in conformance with its regulations, the United States submitted certified copies of "Certificates of Assessments and Payments" for all of the years in question in which plaintiff was assessed for unpaid taxes. These certificates are considered sufficient documentation that procedures were followed correctly in making the statutory required assessments. *See Schmidt v. King*, slip op. Civ.A.No. 87–2612–S (D.Kan. Sept. 29, 1988) [reported in WESTLAW, 1989 WL 124964]; *Baily v. United States*, 355 F.Supp. 325, 330 (E.D.Pa.1973). However, there is no indication in the record before us that the "Summary Report of Assessments", known as Form 23C, was completed and signed by the assessment officer as required by 26 C.F.R. § 301.6203–1.[3] Nor do the Certificates of Assessments and Payments contain 23C dates which would allow us to conclude that a Form 23C form was signed on that date. *See United*

---

**3.** This regulation provides, in relevant part, that "[t]he assessment shall be made by an assessment oficer signing the summary record of assessment. The summary record ... shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment.... The date of the assessment is the date the summary record is signed by an assessment officer." 26 C.F.R. § 301.6203–1. The summary record is commonly known as Form 23C.

*States v. Dixon,* 672 F.Supp. 503, 505–506 (M.D.Ala.1987). Thus, we find that the plaintiff has raised a factual question concerning whether IRS procedures were followed in making the assessments against him and throwing into question the validity of the liens. The Government will have 60 days to provide evidence that the assessment procedures were followed fully.

As to the plaintiff's claims concerning the Notices of Deficiency and Notices and Demand for Payment, we find first, that the information contained in them was wholly adequate to inform the plaintiff of his tax liability and second, that the address contained on them was sufficient. Indeed, the plaintiff's complaint about the address is odd since 26 U.S.C. § 6212 only requires the Government to send a Notice of Deficiency to the taxpayer's last known address and, indeed, the plaintiff has acknowledged receiving them.

 Plaintiff's other allegations in this count are equally without merit. The United States is permitted to prepare and file substitute returns for an individual who has failed to do so. 26 U.S.C. § 6020(b). Such returns are good and sufficient for all legal purposes. 26 U.S.C. § 6020(b)(2). The Paperwork Reduction Act is inapplicable to "information collection request" forms issued during an investigation against an individual to determine his tax liability. *See Cameron v. Internal Revenue Service,* 593 F.Supp. 1540, 1556 (N.D.Ind.1984), *aff'd,* 773 F.2d 126 (7th Cir. 1985). Thus, any alleged failure to comply with the Paperwork Reduction Act provides no basis for avoiding the levies imposed upon Brewer's wages and other

property. *Lonsdale v. United States,* 919 F.2d 1440, 1445 (10th Cir.1990). And finally, plaintiff's argument that the IRS's failure to publish its forms such as Form 1040 violates the Federal Register Act, 44 U.S.C. §§ 1501 et seq. and the Administrative Procedure Act, 5 U.S.C. §§ 552 et seq., is groundless.

> The tax laws, including their administration and enforcement by the Internal Revenue Service, a division of the Department of the Treasury, are probably the best publicized and indexed area of federal law, consisting of a separate title of the United States Code, Title 26, and the Code of Federal Regulations, Title 26 (spanning eighteen volumes), plus extensive commercial compilations and explanations.

*Id.* at 1447. We cannot see what additional notice to the public would be provided by publication in a little-read digest.

 All of plaintiff's allegations regarding the inadequacy of IRS procedures leading to a levy and seizure of his property are dismissed with prejudice, except for his claims concerning possible violations of 26 U.S.C. § 6203 and 26 C.F.R. § 301.6203–1.[4] Our decision regarding this violation is reserved pending further factual exploration as ordered in Part IV, *infra.*

 B. Count II: Plaintiff alleges that the levies and seizures of his property by the government were done in violation of the procedures specified in 26 U.S.C. § 6331. This statute authorizes the Secretary to levy upon all property and rights to property upon which there is a lien. A valid lien is a predicate for the actions

---

**4.** Plaintiff has cross-moved for partial summary judgment on what he calls "the OMB issue." This motion is denied.

The Paperwork Reduction Act mandates that any information collection request from a federal agency display a current control number issued by the Office of Management and Budget ("OMB"). Form 1040, which collects information, contains OMB numbers. However, plaintiff contends that the instruction accompanying the IRS 1040 form and the regulations requiring taxpayers to file returns do not display control numbers and he is thus protected by § 3512 of the Act from any penalty for failing to file the 1040 form itself.

While, the regulations and the instruction booklet may facilitate the completion of a 1040 form, neither are information collection requests within the meaning of the Act, *United States v. Crocker,* 753 F.Supp. 1209, 1216 (D.Del. 1991), and, therefore, do not need to carry OMB numbers. Moreover, the requirement to file a tax return is mandated by statute, not by regulation, and the Paperwork Reduction Act does not apply to statutes, only to the forms themselves which contained the appropriate numbers. *United States v. Wunder,* 919 F.2d 34, 38 (6th Cir.1990).

taken under this section and the validity of the liens on Mr. Brewer's annuity and vacation funds and past wages are questioned in Count I. Should the liens be found to be invalid, the relief sought in this count would be granted through the remedy sought by Count I.

Whether or not the liens were valid, plaintiff has not stated a cause of action under this statute. A levy cannot be made until the Secretary has notified the person of his intention to make the levy, 26 U.S.C. § 6331(d)(1)[5], and ten days has passed. Documents submitted by the plaintiff show that the government sent a Final Notice of Intention to Levy on February 16, 1990. The levies were not made until, at the earliest, February 27, 1990, which satisfied the 10 day requirement. Moreover, a letter written by Mr. Brewer indicates receipt of this Notice and, indeed, Mr. Brewer has not contended that he did not receive adequate notice. *See* 26 U.S.C. § 6331(d)(2).

■■ C. Count III: In this count, plaintiff alleges that the United States has violated the three year statute of limitations established in 26 U.S.C. § 6501 by assessing taxes more than three years after the time they were due. Plaintiff is clearly in error. Section (a) of that statute permits the government to assess taxes whether or not a return was filed on the date prescribed. Furthermore, section (c) provides that in the case of failure to file a return, the tax may be assessed at any time and the three year statute of limitations does not apply.

Here, since Mr. Brewer acknowledges that he failed to file any returns, the government properly could assess the taxes without time limit. Hence, this claim is meritless and is dismissed.

■■ D. Count IV: Plaintiff alleges that the failure to publish the delegation of authority to IRS officials by the Secretary of Treasury through Treasury Department Orders ("TDOs") in the Federal Register

results in this authority not being applicable within the boundaries of the United States. He contends that any actions taken with respect to the seizure of his property are therefore illegal.

The Federal Register Act requires publication of presidential proclamations, executive orders, documents or classes of documents determined by the President to have general applicability and legal effect and documents or classes of documents required to be published by an Act of Congress. 44 U.S.C. § 1505(a). TDOs are not one of the documents enumerated in the Act nor are they documents with general applicability and legal effect. *Lonsdale v. U.S.*, 919 F.2d at 1445. Moreover, no Act of Congress requires publication of TDOs. Thus, we do not agree with the plaintiff that the Internal Revenue Service was acting without authority when it assessed taxes against him and subsequently levied for non-payment.

E. Count V: Paragraph 26 echoes the allegations of Count I and is therefore stricken as redundant. Paragraph 27 alleges that the Defendants have acted outside the scope of their authority, failed in their fiduciary duty to the plaintiff and offered the property for sale without authority. The facts asserted in this count indicate a cause of action arising under 26 U.S.C. § 6335 which governs the sale of seized property. Essentially, plaintiff claims that the government sold his property without having proper title to it and seeks that this court quiet title to the property by finding that the sale was improper.

Earlier, we stated that we lacked jurisdiction to adjudicate plaintiff's claims concerning his Florida or Newburgh properties. As this claim can only apply to that property and not to the seizure of money contained in plaintiff's union accounts, no cause of action exists. This count must therefore be dismissed.

---

**5.** The notice required under [26 U.S.C. § 6331(d)(1) ] shall be—
 (A) given in person,
 (B) left at the dwelling or usual place of business of such person, or
 (C) sent by certified or registered mail to such person's last known address,
no less than 10 days before the day of the levy. 26 U.S.C. § 6331(d)(2).

F. Count VI: This count states no cause of action and appears to be a request for a preliminary injunction. Since we have dealt with this matter earlier, summary judgment will be entered in favor of the defendant for failing to state a claim.

## IV. OTHER MATTERS

 Plaintiff has made some other motions which we will address briefly. In our consideration of Count I, we relied on Form 4340 submitted by the Government in support of its motion. Plaintiff has moved to strike these documents, arguing that they were improperly authenticated and are inadmissible hearsay. We disagree. Consistently, courts have held that Form 4340 is self-authenticating. *See, e.g., United States v. Neff,* 615 F.2d 1235, 1241 (9th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980); *Schmidt v. IRS,* 717 F.Supp. 763, 764 (D.Kan.1989) ("Form 4340, Certificate of Assessments and Payments.... [is] proper and admissible evidence pursuant to Rules 902(1) and 803(8) of the Federal Rules of Evidence"), *vacated on other grounds,* 913 F.2d 837 (10th Cir.1990).

Federal Rule of Evidence 902(4) states that a certified copy of an official record or report or entry therein may be certified as correct by the custodian or other person authorized to make the certification. John J. Tuohy, whose signature appears on the documents, is authorized to certify documents and transcripts. *See* Delegation Order No. 198 (1986); Delegation Order ALB–RM–23 (1986). Form 4340 is a compilation of data stored in a computer, reflecting entries into an official record. Tuohy's signature attests to the accuracy of the completed form and is properly admissible under Rule 902(4).

Plaintiff also moves to defer consideration of summary judgment until discovery is completed, arguing that he is entitled to obtain evidence which is controlled by the government. While court-ordered discovery has not taken place in this case, the plaintiff has obtained a great deal of information under the Freedom of Information Act. In addition, in four of the counts in which summary judgment was granted in favor of the government, the plaintiff has simply failed to allege any facts in his complaint which states a claim against the Internal Revenue Service. The plaintiff himself submitted the documents which were the basis of granting summary judgment in favor of the government in Count II. Discovery prior to our decision on those five counts therefore is not necessary and plaintiff's motion is denied with respect to Counts II through VI.

One factual question has emerged from analysis of Count I because plaintiff has raised a narrow but colorable claim concerning whether the government fully complied with the requirements of 26 C.F.R. § 301.6203–1 governing assessments. Moreover, we have independently raised the question of when the Government took title to the plaintiff's back wages and the contents of his vacation and annuity funds which impacts the jurisdiction of this court. Both issues are easily resolved by the production of specific documents discussed earlier in this decision.

Our decision concerning summary judgment on the remaining issue in Count I and the plaintiff's motion to defer consideration of this decision is reserved pending production of the needed documents. The Government is ordered to ascertain and document, within 60 days, the dates that title passed on Mr. Brewer's back wages and annuity and vacation accounts. Within that same period, the Government is ordered to determine whether Form 23C was completed with respect to those particular properties.

SO ORDERED.