T.C. Memo. 2009-59

UNITED STATES TAX COURT

ROBERT DAVID TUFFT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24381-06L.                    Filed March 18, 2009.

<u>Basil J. Boutris</u> and <u>Jon R. Vaught</u>, for petitioner.

<u>Emily Giometti</u>, for respondent.

MEMORANDUM OPINION

MARVEL, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner

seeks review of respondent's determination to sustain a notice of

Federal tax lien with respect to petitioner's unpaid Federal

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All monetary amounts are
rounded to the nearest dollar.

income tax liability for 2000 and trust fund recovery penalties under section 6672 for periods ended September 30, 1999, December 31, 1999, and December 31, 2000 (relevant quarterly periods).

After concessions,[2] the issue presented is whether respondent abused his discretion in refusing to waive additions to tax under section 6651(a)(2) for petitioner's failure to pay the amount shown due on his 2000 Federal income tax return on or before the date prescribed for payment and under section 6654(a) for his failure to pay estimated Federal income tax. As a threshold matter, respondent argues that petitioner may not challenge the underlying tax liability in this proceeding. We agree, and we sustain respondent's determination.

<u>Background</u>

Some of the facts have been stipulated. We incorporate the stipulation of facts, supplemental stipulation of facts, and stipulation of settled issues into our findings by this reference. Petitioner resided in California when his petition was filed.

---

[2]The parties filed a stipulation of settled issues in which they agreed to the application of three designated trust fund payments. Accordingly, respondent's determination to sustain a notice of Federal tax lien with respect to the trust fund recovery penalties is no longer at issue. In the stipulation of settled issues the parties also agree that respondent correctly waived the addition to tax for failure to file a Federal income tax return under sec. 6651(a)(1).

Petitioner is a physician specializing in internal medicine, gerontology, and undersea and hyperbaric medicine. During 2000 and the relevant quarterly periods petitioner was the sole shareholder and an employee of Internist Medical Group (Internist).

I. Petitioner's Federal Income Tax Liability for 2000

Before April 15, 2001, petitioner consulted Mary Miller (Ms. Miller), a certified public accountant, regarding preparation of his Form 1040, U.S. Individual Income Tax Return, for 2000 (2000 return). On April 15, 2001, petitioner filed a request for an extension of time to file his 2000 return; he submitted a $3,000 payment with his extension request although Ms. Miller had advised him to submit a $2,000 payment. Petitioner knew that he had some Federal income tax liability for 2000 mostly because of his unusually large capital gain income from a sale of stock, but he believed that a capital loss carryover from a prior year would offset his capital gain. On October 17, 2001, petitioner paid $9,000 toward his 2000 Federal income tax liability.

On dates that do not appear in the record Ms. Miller prepared petitioner's 2000 return and sent it to him. On January 25, 2002, petitioner untimely filed his 2000 return reporting a tax liability of $123,263 and payment credits of

$23,475.[3] Petitioner did not pay the amount due when he filed his 2000 return. Although petitioner could have paid his 2000 Federal income tax liability by selling some of his assets, he did not do so because he preferred to avoid doing so in a declining stock market.

On February 25, 2002, respondent assessed the tax shown on petitioner's return, interest, and additions to tax under section 6651(a)(1) for failure to timely file the 2000 return, section 6651(a)(2) for failure to pay the amount shown as due on the 2000 return, and section 6654 for failure to pay estimated taxes. On June 7, 2002, petitioner paid $100,000 toward his 2000 Federal income tax liability.

## II. Petitioner's Liability for Trust Fund Recovery Penalties

Internist failed to timely pay its employment taxes (including amounts withheld from employees' wages) for the relevant quarterly periods. On March 25, 2005, respondent assessed against petitioner civil penalties under section 6672, which authorizes the imposition of penalties upon responsible persons for failure to collect, account for, and pay over certain taxes.

---

[3]The credits consisted of an $11,475 withholding credit and the two payments totaling $12,000. Ms. Miller did not claim petitioner's capital loss carryover on his 2000 return, and petitioner did not file an amended return for 2000 to claim it.

III.  Respondent's Collection Activities

On November 27, 2004, respondent issued a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of intent to levy) for 2000, which he mailed return receipt requested to petitioner.  On January 13, 2005, the Internal Revenue Service (IRS) received a return receipt signed by petitioner.  On December 31, 2004, petitioner submitted to respondent's revenue officer working on his case a request to waive the additions to tax on the basis of reasonable cause.  Petitioner argued that Ms. Miller failed to provide him an estimate of the tax due, failed to inform him that he had to make estimated tax payments, and failed to prepare his 2000 return timely, although he gave her all materials for return preparation by April 2001.[4]

On August 2, 2005, respondent mailed petitioner a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing with respect to his liability for the trust fund recovery penalties for the relevant quarterly periods.  On September 20, 2005, respondent filed a notice of Federal tax lien against

---

[4]Petitioner tried to initiate a malpractice action against Ms. Miller, but the period of limitations had run out. Petitioner also filed a complaint with the California Board of Accountancy, but no formal action was taken against Ms. Miller. Petitioner filed a claim against Ms. Miller with CAMICO Mutual Insurance Co., Ms. Miller's errors and omissions insurance carrier.  The record does not reflect the outcome of the insurance claim.

petitioner in the county recorder's office for Alameda County, California, with respect to petitioner's assessed and remaining unpaid Federal income tax liability for 2000 and trust fund recovery penalties for the relevant quarterly periods. On September 21, 2005, respondent mailed petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC Section 6320 (notice of lien). The notice of lien stated that petitioner owed $34,831 with respect to his 2000 Federal income tax liability and $17,667 with respect to the trust fund recovery penalties.

Petitioner timely submitted a Form 12153, Request for a Collection Due Process Hearing, concerning the notice of lien. In his Form 12153 petitioner again requested a waiver "of failure to file penalty - CPA negligently filed return late" and asserted that respondent's revenue officer misapplied designated trust fund payments. On June 22, 2006, petitioner's new accountant submitted to respondent another request for a waiver of additions to tax because of petitioner's reliance on Ms. Miller. Petitioner's case was assigned to Settlement Officer Linda L. Cochran (Ms. Cochran). On July 5, 2006, Ms. Cochran sent petitioner a letter scheduling a hearing for July 26, 2006. In the letter Ms. Cochran stated that during the hearing she could consider, inter alia, whether petitioner owed the amount due, but only if he had not had an opportunity to dispute it with the

Appeals Office or had not received a notice of deficiency. On July 6, 2006, petitioner mailed a letter to Ms. Cochran acknowledging receipt of her letter and requesting a waiver of additions to tax and abatement of interest because Ms. Miller's "gross malpractice and negligence" were circumstances beyond his control. Petitioner attached the June 22, 2006, letter from his accountant.

On July 26, 2006, Ms. Cochran held a face-to-face hearing with petitioner. During the hearing petitioner again requested an abatement of interest and waiver of additions to tax assessed with respect to his Federal income tax liability for 2000. Petitioner claimed that Ms. Miller had known or should have known the amount of his Federal income tax liability for 2000 but failed to provide him with an approximation of tax due beyond the advice to send $2,000 with the extension request.

On the basis of information petitioner provided, Ms. Cochran waived the addition to tax for failure to file under section 6651(a)(1). Ms. Cochran denied a waiver of the addition to tax for failure to make estimated tax payments because petitioner did not meet the section 6654(e) waiver requirements. Ms. Cochran also denied a waiver of the addition to tax for failure to pay under section 6651(a)(2) because petitioner did not show that his failure to pay his Federal income tax liability for 2000 was due to reasonable cause and not due to willful neglect. In making

the determination Ms. Cochran considered that before 2000 petitioner failed to timely pay his Federal income tax liabilities[5] and that in 2000 he received substantial income but made comparatively minimal tax payments. Ms. Cochran also concluded that petitioner did not satisfy the criteria for interest abatement under section 6404(e).

Besides discussing petitioner's liability for the additions to tax and interest, Ms. Cochran and petitioner also discussed the proper application of three designated trust fund payments.[6] Petitioner did not submit a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, request any collection alternatives, or raise any other issues before or during the hearing.

After the hearing petitioner sent an undated letter to Ms. Cochran requesting that she waive the addition to tax for failure

---

[5]The record establishes that for 1998 petitioner incurred a small addition to tax for failure to pay estimated tax and interest. For 1999 petitioner incurred additions to tax for failure to file under sec. 6651(a)(1), for failure to pay under sec. 6651(a)(2), and for failure to make estimated tax payments under sec. 6654(a).

[6]With respect to the trust fund recovery penalties, petitioner alleged that respondent had misapplied three designated trust fund payments dated Dec. 1, 2005, June 12, 2006, and June 29, 2006, in the respective amounts of $6,870, $10,000, and $797. Petitioner had intended that the IRS apply the three payments to satisfy his liability with respect to civil penalties under sec. 6672 for the relevant quarterly periods. Upon review of petitioner's business checks and other documents, Ms. Cochran determined that respondent had improperly applied $805, $1,330, and $797, respectively, of the three payments.

to make estimated tax payments. In the letter petitioner stated that he remitted only $3,000 with his request for an extension to file the 2000 return on the basis of Ms. Miller's advice.

On October 25, 2006, respondent sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 sustaining the notice of Federal tax lien. In the notice of determination respondent stated that petitioner did not provide financial information or request collection alternatives and that he failed to meet the criteria for the abatement of interest and for waiver of the additions to tax. Petitioner timely petitioned this Court challenging respondent's determination.

## Discussion

### I. Collection Hearing Procedure

Section 6321 imposes a lien in favor of the United States on all property and property rights of a taxpayer liable for taxes after a demand for the payment of the taxes has been made and the taxpayer fails to pay those taxes. The lien arises when the assessment is made. Sec. 6322. Section 6323 generally requires the Secretary to file a notice of Federal tax lien with the appropriate State office for the lien to be valid against certain third parties. Section 6320(a) requires the Secretary to notify the taxpayer in writing of the filing of a notice of Federal tax lien and of the taxpayer's right to an administrative hearing on

the matter. Section 6320(b) affords the taxpayer the right to a fair hearing before an impartial hearing officer. Section 6320(c) requires that the administrative hearing be conducted pursuant to section 6330(c), (d) (other than paragraph (2)(B) thereof), and (e).

At the hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and possible collection alternatives. Sec. 6330(c)(2)(A). A taxpayer is precluded, however, from contesting the existence or amount of the underlying tax liability unless the taxpayer failed to receive a notice of deficiency for the tax liability in question or did not otherwise have an opportunity to dispute the tax liability. See sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, the Appeals Office must issue a notice of determination regarding the validity of the filed Federal tax lien. In making the determination the Appeals Office is required to take into consideration: (1) Verification presented by the Secretary that the requirements of applicable law and administrative procedure have been met, (2) relevant issues raised by the taxpayer, and (3) whether the proposed collection action appropriately balances the need for efficient collection

of taxes with a taxpayer's concerns regarding the intrusiveness of the proposed collection action.  Sec. 6330(c)(3).

If the taxpayer disagrees with the Appeals Office's determination, the taxpayer may seek judicial review by appealing to this Court.  Sec. 6330(d).  Where the validity of the underlying tax liability is properly at issue, the Court reviews the determination regarding the underlying tax liability de novo. Sego v. Commissioner, supra at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the validity of the underlying tax liability is not properly at issue, the Court reviews the determination of the Appeals Office for abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 182.

II.  Petitioner's Challenge to the Notice of Determination

A.  Petitioner's Challenge to the Underlying Tax Liability

Petitioner challenges respondent's refusal to waive the additions to tax under section 6651(a)(2) for failure to pay tax shown on a return and under section 6654(a) for failure to pay estimated Federal income tax.  Because we have interpreted the "underlying tax liability" to include any amounts a taxpayer owes pursuant to the tax laws, Katz v. Commissioner, 115 T.C. 329, 339 (2000), petitioner's argument represents a challenge to the underlying tax liability.

The parties agree that petitioner did not receive a notice of deficiency for 2000. However, respondent relies on the stipulated Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for 2000 to assert that on November 27, 2004, and January 13, 2005, he issued to petitioner two notices of intent to levy with respect to petitioner's 2000 Federal income tax liability.[7] The Form 4340 reflects, in pertinent part, the following actions by respondent:

| Date | Explanation of transaction |
|------|----------------------------|
| 11-27-2004 | Intent to levy collection<br>Due process notice<br>Levy notice issued |
| 01-13-2005 | Intent to levy collection<br>Due process notice<br>Return receipt signed[1] |

[1]Respondent incorrectly refers to the Jan. 13, 2005, entry in the Form 4340 as a record of a second levy notice rather than a record of receiving a return receipt.

Respondent did not introduce in evidence the November 27, 2004, notice of intent to levy and the January 13, 2005, signed return receipt. Nevertheless, Form 4340 is "'generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and

---

[7]The Form 4340 also contains two entries "Statutory Notice of Intent to Levy" dated May 6, 2002, and Oct. 18, 2004, but the literal transcript of petitioner's tax account for 2000 does not reflect such notices. Respondent does not address the effect of these entries. If such notices were sent, they bear no significance for our purposes.

assessments that have been made.'" <u>Orum v. Commissioner</u>, 123 T.C. 1, 9 (2004) (quoting <u>Gentry v. United States</u>, 962 F.2d 555, 557 (6th Cir. 1992)), affd. 412 F.3d 819 (7th Cir. 2005). Petitioner does not dispute that respondent issued him the November 27, 2004, notice of intent to levy, and he does not allege that he did not receive it. Petitioner also does not point out any irregularity in the Form 4340 that would raise a question about its validity. Accordingly, we find that on November 27, 2004, respondent issued petitioner a notice of intent to levy with respect to his 2000 Federal income tax liability.

Our finding is supported by the literal transcript of petitioner's tax account for 2000 (literal transcript) offered in evidence by respondent. The literal transcript confirms that on November 27, 2004, respondent issued petitioner a notice of intent to levy, and on January 13, 2005, respondent received a signed return receipt. Both entries in the literal transcript contain transaction code 971 (TC 971). The Internal Revenue Manual (IRM), which describes the IRS's recordkeeping procedures when a levy notice is issued to a taxpayer, states that a TC 971 indicates issuance of notice of intent to levy, and a second

TC 971 indicates the results of mailing, if known.[8]  1

Administration, IRM (CCH), pt. 5.11.1.2.2.1(3), at 16,737 (June

29, 2001).

Respondent argues that the November 27, 2004, notice of

intent to levy provided petitioner an opportunity to challenge

his underlying tax liability[9] because petitioner could have

requested a hearing under section 6330 but did not.[10]  The

regulations define an opportunity to dispute an underlying tax

liability to include an opportunity for a conference with the

Appeals Office that was offered either before or after the tax

liability was assessed.  Sec. 301.6320-1(e)(3), Q&A-E2, Proced. &

Admin. Regs.[11]  The regulations also provide:

---

[8]If the notice is delivered by the U.S. Postal Service, the return receipt should be delivered to the IRS.  1 Administration, IRM (CCH), pt. 5.11.1.2.2.8(3), at 16,745 (July 26, 2002).

[9]The parties stipulated that petitioner had had a prior opportunity to dispute his trust fund recovery penalty for the relevant quarterly periods.

[10]The record does not show that petitioner requested a hearing with respondent's Appeals Office when he received the Nov. 27, 2004, notice of intent to levy.

[11]In Lewis v. Commissioner, 128 T.C. 48 (2007), we upheld the validity of sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. (it mirrors sec. 301.6320-1(e)(3), Q&A-E2, Proced. & Admin. Regs.).  However, in Lewis, the taxpayer actually participated in a prior conference with the Appeals Office.  In Lewis, we commented as follows in a footnote:

    We reserve judgment today on whether an offer for a
    conference with Appeals is sufficient (and if so, what
                                                (continued...)

Where the taxpayer previously received a CDP Notice under section 6330 with respect to the same tax and tax period and did not request a CDP hearing with respect to that earlier CDP Notice, the taxpayer already had an opportunity to dispute the existence or amount of the underlying tax liability. [Sec. 301.6320-1(e)(3), Q&A-E7, Proced. & Admin. Regs.]

Accordingly, the regulation precludes a taxpayer from challenging a tax liability even if he did not pursue the opportunity for a conference with the Appeals Office. Petitioner does not challenge the validity of this regulation. The November 27, 2004, notice of intent to levy offered petitioner the opportunity to request a hearing with the Appeals Office and an opportunity to contest his underlying tax liability. See id. Petitioner did not do so. Accordingly, during the July 26, 2006, hearing petitioner was precluded by section 6330(c)(2)(B) from challenging the additions to tax.

An Appeals officer may, within his or her sole discretion, consider issues that are precluded from consideration under section 6330(c)(2)(B). Sec. 301.6320-1(e)(3), Q&A-E11, Proced. & Admin. Regs. Ms. Cochran exercised her discretion and considered

----

[11](...continued) information would be required to be included in such an offer) to preclude subsequent collection review consideration if the taxpayer declines the offer without participating in such a conference. * * *

Lewis v. Commissioner, supra at 61 n.9; see also Estate of Sblendorio v. Commissioner, T.C. Memo. 2007-94.

petitioner's request for abatement of interest and waiver of additions to tax.[12]  We have previously held that if the Appeals Office considers a challenge to the underlying tax liability when precluded from doing so by section 6330(c)(2)(B), the Court may not review the determination on that issue because such liability was not properly part of the hearing and is not treated as part of the notice of determination even if the notice of determination discusses the hearing officer's decision.  See Behling v. Commissioner, 118 T.C. 572, 578 (2002); Miller v. Commissioner, T.C. Memo. 2007-35; see also sec. 301.6320-1(e)(3), Q&A-E11, Proced. & Admin. Regs.  Accordingly, petitioner is barred from challenging the existence or amount of his 2000 Federal income tax liability in this proceeding.

B.  Review of the Notice of Determination

Because the validity of the underlying tax liability is not properly at issue, we review respondent's determination for abuse

_____

[12]Petitioner does not argue that respondent's position regarding petitioner's ability to challenge the underlying tax liability for 2000 is impeached by Ms. Cochran's consideration of the abatement request during the hearing.  The parties' stipulation of settled issues stating that Ms. Cochran "correctly determined that petitioner was entitled to abatement of the penalty for failure to file" under sec. 6651(a)(1) with respect to his 2000 Federal income tax liability bears no relevance to our conclusion that the additions to tax were not properly at issue at the July 26, 2006, hearing with the Appeals Office.

of discretion.[13]  See Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.  The Appeals Office abuses its discretion if its "discretion has been exercised arbitrarily, capriciously, or without sound basis in fact."  Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988).

During the hearing petitioner did not offer collection alternatives, and in this proceeding he has not pursued any argument or presented any evidence that would allow us to conclude that the determination to sustain the lien was arbitrary, capricious, without foundation in fact or law, or otherwise an abuse of discretion.  See, e.g., Giamelli v. Commissioner, 129 T.C. 107, 112, 115 (2007).  Ms. Cochran verified that all requirements of applicable law or administrative procedure were met.  Ms. Cochran concluded that the filing of the notice of Federal tax lien balanced the need for efficient collection of taxes with petitioner's concerns that the collection action be no more intrusive than necessary. Accordingly, we conclude that respondent did not abuse his discretion in sustaining the notice of Federal tax lien.

---

[13]Petitioner relies on Lykes v. Commissioner, T.C. Memo. 2004-159, to suggest that because the underlying liability is at issue, the Court must review respondent's determination de novo. Petitioner's reliance on Lykes is misplaced because unlike petitioner, the taxpayer in Lykes had no prior opportunity to dispute the additions to tax, and therefore the validity of the additions to tax was properly at issue before the Court.

C.   Abatement of Interest

Although in his petition petitioner assigned error to respondent's determination not to abate interest, petitioner failed to address the issue of interest abatement in his trial memorandum, at trial, and in briefs.  Accordingly, we deem the issue of interest abatement conceded by petitioner.  See Rule 151(e)(4) and (5); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989).

We have considered the remaining arguments made by the parties and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.  We sustain respondent's determination that the filing of a notice of Federal tax lien was appropriate.

To reflect the foregoing and the parties' stipulations of settled issues,

An appropriate decision will

be entered.